### A08A0127. GANT v. THE STATE.
### A08A0191. BILLINGS v. THE STATE.
(662 SE2d 895)

BERNES, Judge.

Jamal Gant and Dominique Billings were jointly tried and convicted of two counts of aggravated assault and two counts of possession of a firearm during commission of a crime. Billings was also convicted of aggravated battery. Both defendants appeal their convictions. In Case No. A08A0127, Gant challenges the sufficiency of the evidence supporting his convictions. In Case No. A08A0191, Billings contends that the trial court erred in admitting evidence of an attempt or conspiracy to sell marijuana and in failing to merge certain crimes of which he was convicted. For the reasons that follow, we affirm in both cases.

*Case No. A08A0127*

1. The evidence was sufficient to sustain Gant's convictions for aggravated assault and possession of a firearm during commission of a crime.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld.

(Citation omitted.) *Millender v. State*, 286 Ga. App. 331 (1) (648 SE2d 777) (2007).

So viewed, the evidence showed that on the date of the incident, victim Antione Coon called Billings and asked Billings to sell him some marijuana. Later that evening, Billings went to an apartment where Coon was visiting friends. Billings was accompanied by Gant and two other unidentified men. Billings knocked on the door, which was answered by Anthony Gibbs, the second victim. Coon came outside the apartment into the hallway where Coon asked Billings for the marijuana, and Billings asked Coon for a scale to weigh it. Because Coon did not know how to operate the scale, he asked Gibbs to come outside and assist him. Although Gibbs had observed three individuals when he answered the door, he only saw two individuals standing outside when he went to operate the scale. Gibbs began to feel uncomfortable about the situation and felt that "something was [about] to happen."

As Gibbs kneeled down to operate the scale, Billings pulled out a pistol. A struggle ensued between Gibbs and Billings, as Gibbs attempted to push away the gun. At that time, Billings's accomplice shot Coon in the head, rendering his eye useless, and then shot Coon several more times in his shoulder and in both of his legs. Gibbs continued to struggle with Billings and was shot in his side and in his shoulder.

After being shot, Gibbs ran away from Billings and his accomplice. As Gibbs ran away, he saw Gant holding a rifle and standing nearby. Moments later, Gibbs saw Gant and Billings flee from the scene together.

The shootings were reported to the police and a lookout (BOLO) call describing Billings's vehicle was transmitted over the police radio. An officer in the area observed Billings's vehicle and followed it to another apartment location. When the vehicle arrived at the apartment complex's gated entrance, the officer activated the patrol car's blue lights to initiate the stop. Billings then jumped out of the car and fled into the nearby woods. Thereafter, the vehicle sped through the gate and Gant, along with the other occupants, jumped out of the vehicle and led the officer on a foot chase around the apartment complex. Gant and Billings were later apprehended by police during a search of the area.

Police searched Billings's vehicle and discovered a rifle and semi-automatic handgun in the back seat area. Another handgun was discovered laying in the bushes where the co-defendants had fled. Forensic testing showed that the shell casings found at the crime scene matched the handgun recovered from the vehicle.

After Gant was arrested and advised of his *Miranda* rights, he waived his rights and spoke with the investigating officer. Although

Gant initially gave conflicting information, he later admitted that while the shootings were taking place, he was standing outside the vehicle holding a rifle. Gant further admitted that he had observed the physical altercation between Billings and Gibbs, that he fled from the crime scene with Billings after the incident, and that Billings had passed him the pistol to hide in the back seat area during their flight from the crime scene.

Gant argues that this evidence showed only his presence at the crime scene and failed to establish that he intentionally aided and abetted in the commission of the crimes. We disagree. The evidence was sufficient to authorize Gant's convictions as a party to the crimes.

"Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto." OCGA § 16-2-21. Whether a defendant was a party to the crime and aided and abetted in the commission of a crime is a matter for the jury. See *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997). "While it is true that mere presence at the scene of a crime is insufficient to convict one of being a party to the crime, the jury may infer criminal intent from the person's conduct before, during, and after the commission of the crime." (Citation and punctuation omitted.) *Millender*, 286 Ga. App. at 332 (1). See also OCGA § 16-2-6 (criminal intent may be inferred "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted").

Gant's admission that he was holding the rifle throughout the crimes' commission, along with evidence of his flight, authorized the jury to conclude that Gant participated in the crimes by acting as a lookout. See *Millender*, 286 Ga. App. at 331-332 (1). Even though Gant attempted to provide innocent explanations for his acts, the jury was authorized to reject his version of events, particularly in view of his conflicting statements to police. See *Johnson v. State*, 276 Ga. 368, 370-371 (1) (578 SE2d 885) (2003). "[T]he issue of witness credibility rests solely with the jury." *Morgan v. State*, 255 Ga. App. 58, 59 (1) (564 SE2d 467) (2002). Any rational trier of fact could have found beyond a reasonable doubt that Gant was guilty as a party to the aggravated assault and firearm possession crimes. See OCGA §§ 16-2-20, 16-2-21, 16-5-21 (a) (2), 16-11-106 (b); *Millender*, 286 Ga. App. at 331-332 (1); *Sapp v. State*, 280 Ga. App. 592, 594-595 (634 SE2d 523) (2006); *Anderson v. State*, 237 Ga. App. 595, 596 (2) (516 SE2d 315) (1999) ("Where a party has possessed a firearm during the commission of a felony, an accomplice who is concerned in the commission of the crime under OCGA § 16-2-20 is likewise guilty of both offenses.") (citation and punctuation omitted).

## Case No. A08A0191

2. In this appeal, Billings contends that the trial court erred in admitting evidence of the attempt or conspiracy to sell marijuana without prior notice and a hearing pursuant to Uniform Superior Court Rule (USCR) 31.3. His trial counsel, however, failed to object to this testimony at trial.[1] As such, this claim of error has not been preserved for appellate review. See *Corn v. State*, 240 Ga. 130, 136 (4) (240 SE2d 694) (1977); *Thomas v. State*, 253 Ga. App. 58, 61 (2) (557 SE2d 483) (2001).

We nevertheless note that the complained-of testimony was part of the circumstances surrounding the commission of the charged offense. As such, it was admissible as part of the res gestae of the crime, and was not subject to the notice and hearing provisions of USCR 31.3. See *Goldsby v. State*, 273 Ga. App. 523, 527-528 (3) (615 SE2d 592) (2005); *Thomas*, 253 Ga. App. at 61 (2).

3. Billings further contends that the trial court erred in failing to merge the aggravated assault charge of Count 1 and the firearm possession charges of Counts 4 and 6 with the aggravated battery charge of Count 3. We discern no error.

Under OCGA § 16-1-6 (1), "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). In order to prove aggravated assault as alleged in Count 1 of the indictment, the state was required to prove that Billings assaulted Coon with a firearm. This crime was established by evidence that Billings's accomplice shot Coon in his legs multiple times.[2] However, as distinctly alleged in Count 3 of the indictment, the aggravated battery charge required the state to prove that Billings maliciously caused bodily harm to Coon by shooting him in the eye, rendering the eye useless. And, the firearm possession charges in Counts 4 and 6 of the indictment were separately based upon Billings's, Gant's, and their accomplice's uses of a rifle (Count 4) and a 9 mm handgun (Count 6) during the commission of the aggravated assaults. Because each of the crimes required proof of a fact that the other crimes did not, the crimes did not merge legally or factually. See *Goss v. State*, 289 Ga. App. 734,

---

[1] In fact, Billings's trial counsel cross-examined Coon extensively regarding the issue of the drug transaction. Billings, who testified in his defense at trial, also gave testimony on direct examination about the drug transaction.

[2] Billings was responsible for the acts of his accomplice as a party to the crime. See OCGA § 16-2-21.

738 (3) (a) (658 SE2d 168) (2008). Moreover, the firearm possession charges did not merge with the aggravated assault and aggravated battery convictions since "[t]he legislature intended to impose additional punishment against an individual who uses a firearm during the commission of certain crimes, including aggravated assault [and aggravated battery]." *Pace v. State*, 239 Ga. App. 506, 509 (4) (521 SE2d 444) (1999). See OCGA § 16-11-106 (b) (1), (e).

*Judgments affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JUNE 5, 2008.

*Patricia F. Angeli*, for appellant (case no. A08A0127).

*James W. Bradley*, for appellant (case no. A08A0191).

*Jewel C. Scott, District Attorney, Melissa D. Redmon, Tiffany C. Boulware, Anece Baxter White, Assistant District Attorneys*, for appellee.