## S11A1934. SMITH v. THE STATE.
## S11A1935. MACK v. THE STATE.
(721 SE2d 892)

BENHAM, Justice.

Makayla Mack was 30 months old when she died as a result of blunt-force head trauma and strangulation. Both appellant Thomasina Beverly Mack, Makayla's mother, and appellant Demario Steven Smith, appellant Mack's boyfriend at the time the child died, were with the child during the time period within which the fatal injuries were believed to have been inflicted. In a joint trial, appellants were convicted of and sentenced to life imprisonment for the malice murder of the child.[1]

The testimony of the deputy chief medical examiner who performed an autopsy on the child and medical personnel who examined the child in several hospitals, taken together, established that the child had an indented ligature mark around her neck that was consistent with having been inflicted by a telephone cord, hemorrhaging in her eyes and around her hyoid bone, both signs of strangulation, and an adult human bite mark on her left arm. She had ear injuries that usually were the result of inflicted trauma, internal injuries to her head, and internal bleeding on the brain. Appellant Mack informed medical personnel the child had suffered several seizures that caused her to hit her head the day before she died, had been scratching herself due to what Mack believed was an allergic reaction, and had been treated for eczema. A cousin of the victim's biological father testified that she had seen appellant Mack

---

[1] The child died on December 10, 2008, and a Coweta County grand jury returned a true bill of indictment charging appellants with malice murder, felony murder (with cruelty to a child as the underlying felony) and cruelty to a child on June 1, 2009. Appellants were tried together in a trial that commenced on April 26, 2010, and concluded on April 29, 2010, when the jury returned its verdicts and the trial court imposed sentence. Both appellants were sentenced to life imprisonment on the malice murder conviction, with the felony murder conviction being vacated by operation of law and the conviction for cruelty to a child being merged as a matter of fact into the malice murder conviction. Appellant Mack's motion for new trial, filed on April 29, 2010, and amended on April 21, 2011, was heard on June 30, and denied on July 11. A timely notice of appeal was filed on July 27, 2011. Appellant Smith's motion for new trial, filed on May 3, 2010, also was heard on June 30, 2011 and denied on July 11. Smith filed a notice of appeal on July 18, 2011. Both appeals were docketed in this Court to the September 2011 term of court and submitted for decision on the briefs.

spank the child and pull or pinch the child's ears when the child was eight-nine months old.

People who were with appellant Mack when she was told her child had died (physicians, social worker, investigator for the GBI medical examiner, the hospital liaison for the Georgia Department of Family and Children Services) testified to Mack's flat affect and lack of emotion upon hearing that the child had died. The social worker testified that, while she was completing an assessment called for when child neglect or abuse is suspected, appellant Mack asked several times if she were going to jail.

Appellant Smith told police he had inflicted the bite mark found on the child's arm while tickling the child. At trial, he testified that the child had told him that appellant Mack had bitten her. A forensic dentist testified the bite was "forceful" and would have been painful to the child. Appellant Smith testified that he had seen appellant Mack choking the child with the tie strings of a hat several days before the child died, and had seen Mack strike the child with a leather belt and with her hand. He testified that Mack was with the child just before Smith found the child was not breathing. Smith testified he started cardio-pulmonary resuscitation on the child, and acknowledged that, in October 2007, he had revived the same child with CPR when she had been found unresponsive while in his care.

1. Appellant Mack contends the trial court erred when it denied Mack's motion for a directed verdict of acquittal. An appellate court applies the "sufficiency of the evidence" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) when reviewing a trial court's denial of a motion for directed verdict of acquittal. *Bell v. State*, 284 Ga. 790 (1) (671 SE2d 815) (2009). Appellant argues the State presented circumstantial evidence that did not exclude all reasonable hypotheses save that of her guilt. See OCGA § 24-4-6. Generally, however, questions as to the reasonableness of hypotheses are for the factfinder and where the factfinder is authorized to find that the circumstantial evidence was sufficient to exclude all reasonable hypotheses except the guilt of the accused, its determination will not be disturbed on appeal unless the guilty verdict is insupportable as a matter of law. *Robles v. State*, 277 Ga. 415 (1) (589 SE2d 566) (2003). In light of the evidence summarized above, we conclude the trial court did not err when it denied appellant Mack's motion for a directed verdict of acquittal. The circumstantial evidence presented by the State was sufficient to authorize a rational trier of fact to find appellant Smith guilty beyond a reasonable doubt of malice murder. See *Scott v. State*, 281 Ga. 373 (1) (637 SE2d 652) (2006).

2. Appellant Mack next contends the trial court erred when it denied Mack's motion to sever her trial from that of Smith, her co-indictee, because Smith's testimony implicated Mack in the

child's death and Mack was tainted by Smith's status as a convicted felon who admitted to having used cocaine days prior to the child's death. In a capital case in which the death penalty is not sought, a trial court's decision not to sever the trials of co-indictees is reviewed for abuse of discretion, and the movant must make a clear showing that the joint trial was prejudicial and resulted in a denial of due process. *Rivers v. State*, 283 Ga. 1 (2) (655 SE2d 594) (2008). Mack has not made the requisite showing. Smith's testimony implicating Mack would have been admissible in a separate trial (see OCGA § 17-8-4 (a); *Kennedy v. State*, 253 Ga. 132 (2) (317 SE2d 822) (1984)), and "no prejudice amounting to a denial of due process rights is shown where an accomplice, who is subject to cross-examination, takes the stand and blames the appellant or attributes to the appellant a greater degree of culpability than the accomplice himself bears." *Flores v. State*, 308 Ga. App. 368 (3) (707 SE2d 578) (2011). Even if Mack suffered some prejudicial effect from the admission of evidence of Smith's prior conviction, it did not amount to the denial of due process necessary to constitute an abuse of discretion that would make the denial of severance reversible error. See *Hamilton v. State*, 179 Ga. App. 434 (3) (346 SE2d 881) (1986).

3. Appellant Mack next sees error in the trial court's admission, over objection, of the testimony of the deputy medical examiner in which she related her observations of Mack during her interview of Mack. The deputy medical examiner testified that, while at the pediatric hospital at which the child was being treated, she sought from Mack information about the child's medical history. The witness stated her general observation of Mack's demeanor upon being told that her child had died was "she was just basically very flat, somewhat — not very emotional" and that she "kind of cried just a little bit but not very long." A witness who personally observed the event to which she is testifying may state her impressions drawn from, and opinions based upon, the facts and circumstances observed by her. *Bridges v. State*, 279 Ga. 351 (7) (613 SE2d 621) (2005). See also *Bly v. State*, 283 Ga. 453 (1) (660 SE2d 713) (2008). A person's state of mind or mental condition is properly the subject of opinion testimony after the facts and circumstances upon which the opinion is based are stated. *Dix v. State*, 238 Ga. 209 (2) (232 SE2d 47) (1977). The trial court did not err when it allowed the testimony.

4. Appellant Mack argues that the trial court erroneously permitted evidence of Mack's bad character to be admitted when it allowed the deputy medical examiner and others to testify about Mack's lack of emotion at the death of her daughter and when it allowed the prosecutor to note during his closing argument Mack's lack of emotion at trial during the display of autopsy photos of her child. As stated in Division 3, supra, a witness may give her opinion

of a person's state of mind or mental condition after stating the facts and circumstances upon which the opinion is based. Id. "The permissible scope of [closing] argument is vast" (*Morgan v. State*, 267 Ga. 203 (1) (476 SE2d 747) (1996)), and the content of closing argument is not improper when it is based on a reasonable inference from the evidence. *Ledford v. State*, 289 Ga. 70 (15) (709 SE2d 239) (2011). The trial court did not err when it overruled appellant Mack's objections to the prosecutor's closing argument.

5. Appellant Smith contends he was not afforded the effective assistance of counsel at trial.

> To prevail on his claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30 (4) (644 SE2d 837) (2007). Appellant Smith had the burden to prove that trial counsel's conduct did not fall within the wide range of reasonable professional conduct. Appellant Smith contends trial counsel performed deficiently by failing to interview witnesses for both the State and the defense before trial and failing to investigate the allegations; failing to educate herself to read and comprehend the medical reports that were introduced in this case; failing to file discovery motions and to subpoena essential documents and physical evidence; failing to hire a forensic dentist to rebut the testimony of the State's expert; failing to request a charge on voluntary manslaughter or to seek severance of the parties; failing to introduce into evidence a letter purportedly from co-defendant Mack to appellant Smith; failing to question the State's witness about the victim's medical records; and failing to prepare appellant Smith to testify.

At the hearing on appellant Smith's motion for new trial, trial counsel testified that she was the third attorney to represent Smith and did not have to file any motions because her predecessors had done so and had passed on to her a file of over 1,000 pages. The prosecutor also provided her with a copy of his file on Smith's case, and she found its contents to be identical to the file she received from prior defense counsel. Trial counsel acknowledged she had not spoken before trial with the deputy medical examiner who performed the autopsy, explaining that she did not see the need to do so since the autopsy report was favorable to appellant Smith's version of events and mentioned signs of long-term abuse for which appellant Smith could not have been responsible since his exposure to the

victim through his relationship with appellant Mack was relatively recent. Trial counsel testified she did not ask for a jury instruction on voluntary manslaughter because it would have required an admission that Smith had committed an unlawful act, and her client was adamant that he had done nothing wrong and did not want to present that alternative to the jury. Trial counsel testified she had read all the medical reports, including those of the victim's sibling, and educated herself on terms she did not understand. Trial counsel acknowledged that, prior to trial, appellant Smith had shown her a letter he claimed appellant Mack had written to him that stated, "I knew you never hit me or my kids." Trial counsel said that, as a matter of trial strategy discussed with and agreed to by her client, she did not seek to have the letter admitted because of authentication problems due to the letter not identifying either the writer or recipient, because the letter contained material not favorable to her client, and because the complete letter's contents were at odds with the trial strategy to present Smith as a loving and caring father. When asked about her decision not to engage the services of a forensic dentist to impeach or rebut the testimony of the State's dental expert, trial counsel pointed out that the opinion of the State's witness — that he could not conclude that either Smith or Mack had left the bite mark on the child — was favorable to appellant Smith and, in light of Smith's admission to police that he had bitten the child, counsel did not want to risk the possibility that another expert might opine that appellant Smith had bitten the child.

The alleged deficiencies in trial counsel's performance about which appellate counsel questioned trial counsel were either without factual basis or were decisions made as matters of trial strategy. With regard to the latter, appellant did not overcome the strong presumption which a reviewing court must indulge — that counsel's challenged conduct might be considered sound trial strategy. See *Strickland v. Washington*, 466 U. S. 668, 689 (104 SC 2052, 80 LE2d 674) (1984); *Ford v. State*, 290 Ga. 45 (5) (717 SE2d 464) (2011). Accordingly, the trial court did not err when it denied the portion of appellant Smith's motion for new trial alleging ineffective assistance of trial counsel.

6. Appellant Smith asserts the trial court erred when it denied Smith's motion to continue the hearing on the motion for new trial in order for Smith's appellate counsel to obtain possession of the dental molds made by the State's forensic dental expert and to present them to another dental expert for examination. The trial court also declined to enforce appellant Smith's subpoena duces tecum served on the District Attorney to produce the dental molds for use by appellant Smith's dental expert. We see no error in the

trial court's refusal to enforce the subpoena duces tecum in light of the trial court's wide discretion in determining what evidence is relevant and material. *Kosal v. State*, 204 Ga. App. 708 (6) (420 SE2d 621) (1992). Likewise, we see no abuse of the sound legal discretion vested in a trial court with regard to the grant or denial of a motion for continuance. OCGA § 17-8-22; *Glass v. State*, 289 Ga. 706 (4) (715 SE2d 85) (2011).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012.

*Maryellen Simmons, Jennifer A. Trieshmann*, for appellant (case no. S11A1934).

*Walker L. Chandler*, for appellant (case no. S11A1935).

*Peter J. Skandalakis, District Attorney, Kevin T. McMurry, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.