**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 24, 2014**

# In the Court of Appeals of Georgia

A14A0134. PATTERSON v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Brian Keith Patterson appeals his aggravated battery conviction.[1] He contends on appeal that the evidence was insufficient, that trial counsel rendered ineffective assistance, that the trial court erred in admitting opinion testimony as to his intent, and also erred in denying his motion for mistrial after it was shown that the bailiff had repeated conversations with the jury during its deliberations. Upon our review, we affirm.

> On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia* [443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).] This same standard applies to our review of the trial court's denial of [Patterson's] motion for new trial.

---

[1] Patterson was found not guilty of criminal attempt to commit murder.

The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

So viewed, the evidence shows that Patterson and the victim were involved in a relationship and were staying at the home of a friend of the victim. On the night of the incident, the couple argued after the victim told Patterson that she wanted to leave and go to her mother's home. Patterson told her, "Bitch, you ain't going nowhere," and when she "kept saying I'm going home," he told the victim that he would "set [her] afire." The victim testified that she thought he was joking and did not believe that he would because he was "not that violent." The victim walked away from Patterson, then turned back toward him and saw that he was holding an open bottle of alcohol in one hand and a cigarette lighter in the other hand. Patterson poured the alcohol on her head and threw the lighter at the victim, and she "went up in flames." The friend testified that he heard Patterson "hollering at [the victim] and cussing her and saying all kinds of things to her." The friend stayed in his bedroom until he heard the victim scream and then ran into the living room where he saw that her hair and body were on fire. He testified that she was lying on the floor and Patterson was on top of her trying to put out the fire. He further testified that Patterson repeatedly said

2

to the victim, "I didn't mean it. I'm sorry." The friend called 911, and while they waited, the victim got into the shower in an attempt to put out the fire, then ran out of the apartment to a neighbor's house for help. The victim was eventually transported to the hospital, where she was treated for approximately three months. She sustained third degree burns over 40-45 percent of her body, and as a result of the burns, she suffered permanent scarring to her face, hands, arms, torso, and back, and the loss of full use of her right hand.

Patterson told police that the victim was "cleaning her crack pipe" with alcohol and that when it exploded the victim caught on fire. The victim also initially told hospital personnel that she had accidently burned herself when she was cleaning her crack pipe, but told police that Patterson had intentionally set her on fire. The investigating officer testified that he recovered an alcohol bottle from the friend's apartment that appeared to have been "squeezed" with visible "imprints of a finger. . . on the outside of the bottle," and that he had not recovered a crack pipe at the apartment. The victim admitted at trial that she had used crack cocaine every day for 31 years, including the day of the attack.

1. As an initial matter, we note that Patterson's brief fails to comply with our rules in several respects. It contains no pagination, it does not provide a statement of

3

the method by which each enumeration of error was preserved for consideration, the one paragraph "Statement of Material Facts" directs this Court to "See trial transcript" without any presentation of the facts below or citations to the record, and the enumerated errors are sporadically, if at all, supported by record citations. See Court of Appeals Rules 24 (e); and 25 (a) (1), (c) (2) (i). "It is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Citation and punctuation omitted.) *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 740 (7) (698 SE2d 19) (2010). Given the numerous shortcomings of Patterson's brief, we would be authorized to dismiss it. See Court of Appeals Rule 7. However, the State has provided sufficient citations to the record in its brief, and we therefore will address the merits of the appeal to the extent possible.

2. Contrary to Patterson's contention, the evidence in this case was sufficient to find him guilty of aggravated battery. See OCGA § 16-5-24 (a) ("A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.")

4

Where there is a conflict in the testimony of witnesses, their credibility is for the jury, and not this court to decide. On appeal of a criminal conviction, the evidence is to be viewed in the light most favorable to the prosecution (i.e., in the light most favorable to the jury's determination that the defendant is guilty), not in the light most favorable to the defendant.

(Citations and punctuation omitted.) *Morgan v. State*, 195 Ga. App. 52, 53 (392 SE2d 715) (1990). Moreover, the victim's testimony alone was sufficient to support a finding that Patterson attacked the victim. See former OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.")[2] "And any inconsistencies between the victim's trial testimony and her out-of-court statements were issues of witness credibility that were solely within the province of the jury and play no part in this [C]ourt's sufficiency of the evidence review." (Citation and punctuation omitted.) *Chamblee v. State*, 319 Ga. App. 484, 485 (735 SE2d 810) (2012).

3. Patterson also contends that trial counsel was ineffective for failing to object to the victim's statement regarding his recent release from prison, that trial counsel

---

[2] Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, this language is now codified at OCGA § 24-14-8. Patterson's trial was held in 2010.

did not spend adequate time with him before the trial, and that trial counsel failed to present certain witnesses that Patterson requested. We do not agree.

To prevail on his claim of ineffective assistance of counsel, Patterson "must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If he fails to meet his burden of proving one prong of the two-prong test, then the other prong need not be reviewed by this Court. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001). "The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."

6

(Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Although Patterson contends that trial counsel was ineffective for spending a limited amount of time with him before the trial and for failing to call certain witnesses, neither of these errors is supported with any further argument, citations to the record, or legal authority. Thus, these claims of error are deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2) which provides that an argument is deemed abandoned when it is unsupported by a citation to authority. See *Jamale v. State*, 302 Ga. App. 140, 144 (3) (690 SE2d 420) (2010).

Patterson also contends that trial counsel was ineffective for not objecting to testimony from the victim that Patterson had recently been "locked up." During the victim's testimony she testified that in the past three or four months she and Patterson had recently gotten back together because "he had just got out." The State responded, "All right. So you had been," and the victim interrupted and stated, "Because he was locked up for–." The State interrupted her testimony and asked, "Okay, so you had been with him about three or four months; is that true?"

We have held that the decision not to object to certain testimony at trial to avoid drawing attention to it is a "legitimate trial strategy that falls within the range

of reasonable professional conduct." (Citation omitted.) *Durham v. State*, 292 Ga. 239, 241-242 (4) (a) (734 SE2d 377) (2012). Patterson's attorney did not testify at the motion for new trial hearing, therefore "[Patterson] has not overcome the presumption that counsel's decision fell within the wide range of reasonable, professional conduct." (Citation and punctuation omitted.) *Arellano v. State*, 289 Ga. App. 148, 153 (5) (656 SE2d 264) (2008).

4. We also find no merit to Patterson's contention that the trial court erred in overruling his objection to testimony from the victim that Patterson had intentionally set her on fire. The victim was asked if she had burned herself while cleaning a crack pipe, and when she responded in the negative the State asked her, "Was this an intentional act by [Patterson] against you?" She responded yes, and Patterson objected. The trial court overruled the objection.

"Georgia law generally precludes a witness from testifying as to his or her opinion regarding an ultimate issue in the case because to do so would invade the province of the jury." (Citation and punctuation omitted.) *Towry v. State*, 304 Ga. App. 139, 143 (2) (a) (695 SE2d 683) (2010). See former OCGA § 24-9-65.[3] Here,

---

[3] OCGA § 24-9-65 was repealed on January 1, 2013, when Georgia's new Evidence Code took effect, and was replaced with OCGA § 24-7-701 (a).

8

however, contrary to Patterson's assertion, the victim's testimony did not invade the province of the jury. See *Brown v. State*, 275 Ga. App. 99, 105 (4) (a) (619 SE2d 789) (2005) (victim's testimony that defendant stabbed him on purpose was not inadmissible as invading the province of the jury, where testimony was based on defendant's physical behavior observed by victim). "A witness who personally observed the event to which she is testifying may state her impressions drawn from, and opinions based upon, the facts and circumstances observed by her." *Smith v. State*, 290 Ga. 428, 430 (721 SE2d 892) (2012).

During his testimony, the investigating officer was asked if the victim told him during her interview that the fire was an accident, and he responded that, "She stated that it was intentional." He later responded in the affirmative when asked if the victim had clearly indicated that she had not accidently set the fire, but that it was intentional. The officer's testimony was related to statements provided to him by the victim during his investigation, and in response to Patterson's contention that the victim had initially told hospital personnel that she had accidently set herself on fire while cleaning a crack pipe. The officer was never asked for, nor did he ever give, an opinion as to the ultimate issue, i.e., whether Patterson intentionally set the victim afire.

5. Patterson's contention that the trial court erred in failing to declare a mistrial because of improper juror conduct is deemed abandoned. Although Patterson complains about a purported irregularity in the conduct of a juror, he does not say which juror committed the improper conduct, what the improper conduct, was or present any legal argument or relevant authority in support thereof. See Court of Appeals Rule 25 (c) (2) (an argument is deemed abandoned when it is unsupported by a citation to authority); *Blanks v. State*, 311 Ga. App. 351, 353 (2) (715 SE2d 762) (2011).

*Judgment affirmed. Boggs and Branch, JJ., concur*.