**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2019**

# In the Court of Appeals of Georgia

A19A1575. FORDHAM v. THE STATE.

MARKLE, Judge.

Following a jury trial, Andrew Fordham was convicted of two counts of aggravated battery and one count of aggravated assault. Fordham appeals his conviction and from the trial court's denial of his motion for new trial, as amended, arguing, as is relevant here, that (1) he was denied his constitutional right to be present at all critical stages of the proceeding, (2) he was denied effective assistance of counsel because his trial counsel failed to object when a witness improperly expressed his opinion on the ultimate issue in the case, and (3) the trial court erred by failing to merge his aggravated battery and aggravated assault convictions for purposes of sentencing. After a through review of the record, we affirm the trial court's denial of the motion for new trial, finding that Fordham was not deprived of

his right to be present at all critical stages of the proceedings, nor was he denied effective assistance of counsel. However, because the aggravated battery counts and the aggravated assault count merged, we vacate the sentence and remand for re-sentencing consistent with this opinion.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that, in April 2013, Fordham was in a six-year relationship with his then girlfriend, C. S. On April 28, 2013, Fordham and C. S. were spending the weekend together at her home when Fordham went into the bathroom, presumably to take a shower. He called to C. S. to bring him a towel because he had spilled water on the floor. As C. S. approached the bathroom door, she noticed Fordham was holding a bowl, and he splashed the contents, later discovered to be sulfuric acid drain cleaner, onto C. S.'s face and upper body. C. S. begged Fordham to rinse her off with water, but he refused. Fordham eventually called 911.[1] The 911 operator instructed Fordham to rinse C. S. off and he replied that he had, but Fordham told C. S. that he had been told *not* to rinse her off.

---

[1] The recording of the 911 call was admitted into evidence and played for the jury.

2

Emergency Medical Technicians ("EMTs") arrived at C. S.'s home, assessed her condition, and took her outside into the rain to rinse the chemical off of her. C. S. was subsequently taken to Grady Hospital, where she was placed in a medically-induced coma for two months. C. S. suffered chemical burns to 20 percent of her body, including her face and upper chest; she is legally blind in her right eye; and she has undergone at least 13 reconstructive surgeries. She also had to learn to walk again.[2]

On the day of the incident, detectives took pictures and measurements of the chemical splash marks, and noticed large burn patterns on the carpet outside the bathroom and extending up to eight feet on the walls. One EMT stated that something about the scene did not seem right to him. Another EMT indicated that the story of how the chemical came into contact with C. S. did not make sense, and that Fordham's explanation kept changing as the EMTs assessed C. S. and the scene. Investigators from the Henry County police department crime scene unit conducted

---

[2] Photographs of C. S.'s injuries were admitted at trial and shown to the jury.

re-enactments of the scene in C. S.'s bathroom and hallway.[3] The re-enactments were inconsistent with Fordham's claim that he accidentally spilled the liquid onto C. S.

Fordham testified in his own defense at trial, stating that the incident was an accident, and that he slipped on the wet floor and spilled the liquid on C. S.

The jury convicted Fordham of two counts of aggravated battery (Counts 1 and 2) and one count of aggravated assault (Count 3).[4] The trial court sentenced him to 20 years' probation as to Count 1, to run consecutive to the sentence imposed on Counts 2 and 3; 20 years' imprisonment on Count 2, to run concurrent with Count 3; and 20 years' imprisonment on Count 3. Fordham filed a motion for new trial, an amended motion for new trial, and a second amended motion for new trial. Following a hearing, the trial court denied the motions. This appeal followed.

1. In his first enumeration of error, Fordham argues that his exclusion from the bench conferences during jury selection, at which certain jurors were excused for cause, violated his constitutional right to be present at all critical stages of the proceeding. We disagree and find that Fordham acquiesced to his absence.

---

[3] The videotaped re-enactments were admitted into evidence and played for the jury.

[4] Fordham was also charged with burglary in the first degree. However, the trial court directed a verdict of not guilty on this count.

It is well-established that "[p]roceedings at which the jury composition is selected or changed are . . . critical stage[s] at which the defendant is entitled to be present." (Citations omitted.) *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012). As such, Fordham "clearly had a constitutional right to be present during the proceedings at which one of the jurors trying his case was removed." Id.; see also *Williams v. State*, 300 Ga. 161, 165 (3) (794 SE2d 127) (2016) (although defendant was present when juror asked to be excused for hardship and when court announced that juror was excused for that reason, he had a right to be present during the bench conference at which juror's excusal was discussed); *Ramirez v. State*, 345 Ga. App. 611, 616 (2) (814 SE2d 751) (2018) (recognizing a defendant's right to be present at a bench conference where the topic of striking a potential juror is discussed).

Nevertheless, a defendant is free to waive this right, either personally or through counsel. See *Williams*, 300 Ga. at 165 (3).

> For a waiver by counsel to be binding on the defendant, it must be made either at the defendant's express direction or in open court in the defendant's presence; if it is not, however, the waiver may be subsequently made effective by the defendant's acquiescence. Acquiescence, which is a tacit consent to acts or conditions, may occur when counsel makes no objection and a defendant remains silent after

5

he or she is made aware of the proceedings occurring in his or her absence.

(Citations and punctuation omitted.) Id. at 165-166 (3); see also *Murphy v. State*, 299 Ga. 238, 240-241 (2) (787 SE2d 721) (2016). Furthermore, our Supreme Court has explained that a defendant's failure to object to his exclusion from a bench conference, after the trial court has advised those in the courtroom, including the defendant, about the topic discussed constitutes acquiescence. See *Heywood v. State*, 292 Ga. 771, 775 (3) (743 SE2d 12) (2013); see also *Jackson v. State*, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004) (holding that appellants acquiesced in the proceedings when their counsel made no objection to their exclusion from an in-chambers conference and appellants remained silent after the subject was brought to their attention).

Here, during jury selection, the prosecutor asked potential jurors if there was any prejudice or bias resting upon their minds either for or against the accused. After several jurors raised their hands in response, the trial court held a bench conference with each individual potential juror. The prosecutor and defense counsel were present for these conferences.[5] After each bench conference, the potential juror was excused.

_____

[5] The bench conferences were not transcribed.

Jury selection resumed, and, at the conclusion of questioning, counsel for both sides and the trial court discussed in open court the dismissal of certain potential jurors who had already formed an opinion about the case or had a hardship, and the trial court reviewed with counsel the three jurors previously struck for cause. Once the jury was selected, the trial court asked both the prosecutor and defense counsel if there was any objection to the jury selection process, and Fordham's trial counsel did not object. Fordham was present throughout jury selection with his attorney.

On this record, we conclude Fordham was aware of the subject matter of the proceedings from which he was excluded, and he acquiesced to counsel's waiver of his presence by failing to voice any objection, either directly or through counsel, to his absence at the bench conferences at which the jurors' excusals were discussed. See *Williams*, 300 Ga. at 166 (3); see also *Murphy*, 299 Ga. at 240-241 (2); *Heywood*, 292 Ga. at 775 (3). Accordingly, this argument is without merit.

2. Fordham next argues that he was denied effective assistance of counsel when his attorney failed to object to the EMT's testimony in which he opined that the incident was not an accident because such testimony improperly invaded the province of the jury. We conclude that Fordham has not met his burden.

To succeed on a claim that counsel was constitutionally ineffective, [Fordham] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817 (2) (809 SE2d 738) (2018).

Fordham's sole defense at trial was that the incident that caused C. S.'s injuries was an accident, and he asserts that his trial counsel should have objected when the EMT intimated otherwise. "Georgia law generally precludes a witness from testifying as to his or her opinion regarding an ultimate issue in the case because to

8

do so would invade the province of the jury." (Citation omitted.) *Patterson v. State*, 327 Ga. App. 695, 699 (4) (761 SE2d 101) (2014); see also *Chamberlain v. State*, 347 Ga. App. 775, 782 (3) (b) (819 SE2d 303) (2018). However, "[a] witness who personally observed the event to which [he] is testifying may state [his] impressions drawn from, and opinions based upon, the facts and circumstances observed by [him]." (Citation omitted.) *Patterson*, 327 Ga. App. at 699 (4).

At trial, when asked about the victim and the scene, one of the responding EMTs testified that his observations "kind of threw me off to where it just didn't seem right." The EMT stated that, in viewing the bathroom scene, hearing Fordham's comments at the scene, and observing the liquid in the coffee cup, "[t]he amount that was used, stating that it was an accident. And it just didn't make any sense of why you would put that kind of liquid in something that you drink out of or eat out of."

Here, Fordham has not shown how counsel's failure to object to this testimony was deficient. The EMT merely gave his personal opinion of the event based on his observations of the scene. His statement did not invade the jury's province as to the ultimate issue in the case because he never stated that the incident was not an accident. In this regard, an objection to this challenged testimony "would have been

9

meritless, and failure to make a meritless objection cannot be evidence of ineffective assistance of counsel." *Chamberlain*, 347 Ga. App. at 783 (3) (b).

Moreover, at the motion for new trial hearing, trial counsel explained that he did not object to the EMT's testimony because "it just didn't seem significant to object to it." Counsel further stated that his interpretation of the EMTs' cumulative testimony was that they were relying on C. S.'s initial impression that the incident was an accident, but that they could not tell if it was an accident. Trial counsel thus made a strategic decision not to object to the EMT's testimony because he felt it supported his defense theory that the incident was, in fact, an accident. "[T]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Fleming v. State*, __ Ga. __ (830 SE2d 129, 138 (5)) (2019); see also *Thomas v. State*, 284 Ga. 647 650 (3) (b) (670 SE2d 421) (2008) ("As a general rule, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel.") (citation omitted). "Decisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy and usually provide no basis for reversal of a conviction." *Goldey v. State*, 289 Ga. App. 198, 199 (2) (a) (656 SE2d 549) (2008). Fordham has not

shown that his trial counsel's strategy was unreasonable. *Goldey*, 289 Ga. App. at 199 (2) (a). Thus, Fordham has not shown that counsel's performance was deficient, and, therefore, he has not met his burden to show ineffective assistance of counsel.

3. Finally, Fordham argues that the trial court erred in sentencing him on both aggravated battery counts as well as on aggravated assault based on a single unlawful act, and that the counts should have merged into one for purposes of sentencing. The State concedes that Fordham must be resentenced, and we agree.

"The doctrine of merger precludes the imposition of multiple punishments when the same conduct establishes the commission of more than one crime. Whether offenses merge is a legal question, which we review de novo." (Citations omitted.) *Louisyr v. State*, 307 Ga. App. 724, 730 (2) (706 SE2d 114) (2011).

> While an accused may be *prosecuted* for more than one crime arising out of the same criminal conduct, he may not be *convicted* of more than one crime arising out of the same criminal conduct where one crime is included in the other. A crime is included in the other when: (1) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or (2) It differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission. With respect to subsection (1), the "required

11

evidence test" is utilized to determine whether multiple convictions are precluded because one of the crimes was established by proof of the same or less than all the facts that were required to establish the other crime.

(Citations and punctuation omitted.) *Regent v. State*, 299 Ga. 172, 175 (787 SE2d 217) (2016); see also OCGA § 16-1-6; OCGA § 16-1-7.[6]

Here, Fordham was charged with two counts of aggravated battery against C. S. for causing bodily harm to her when he threw the drain cleaner on her, seriously disfiguring her head and rendering her eye useless. He was also charged with aggravated assault against C. S. for using the drain cleaner as an offensive weapon, which was likely to result in serious bodily injury, when he threw it on her. The evidence was sufficient to support the convictions on all three counts. However, the trial court sentenced Fordham separately on these counts.

As to the two counts of aggravated battery, both counts were accomplished by the single act of throwing acid on C. S. and, therefore, one count should have merged

---

[6] Under OCGA § 16-1-6 (2), a crime is included in another crime when "it differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, . . . or a lesser kind of culpability suffices to establish its commission." OCGA § 16-1-7 (a) (1) provides that the accused may not be convicted of more than one crime if one crime is included in another.

12

into the other for purposes of sentencing. See *Gonzales v. State*, 298 Ga. App. 821, 823 (1) (681 SE2d 248) (2009) (merger required where the two counts of aggravated battery resulted from the single act of pushing the victim out of a moving car); compare *Eskew v. State*, 309 Ga. App. 44, 48-49 (4) (709 SE2d 893) (2011) (trial court did not err in sentencing Eskew on both counts of aggravated battery where the act of fracturing the child's skull was a separate act from violently shaking the child).

As to the charge of aggravated assault, this count likewise was based on the single criminal act of Fordham throwing acid on C. S. It required proof that Fordham threw the acid, a weapon likely to result in serious bodily injury, and differs from the aggravated battery counts only with respect to the specificity of the injury or risk of injury C. S. actually suffered because the battery counts alleged disfigurement or rendering a member of her body useless. Thus, as charged in the indictment, the aggravated assault is included in the aggravated battery and should have merged for purposes of sentencing. See *Regent*, 299 Ga. at 176.

Accordingly, as the State concedes, we must vacate the sentence imposed on these counts, and remand the case to the trial court for resentencing, consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Doyle, P. J., and Coomer, J., concur.*

14