306 Ga. 809
FINAL COPY

S19A0912.  HAWKINS v. THE STATE.

ELLINGTON, Justice.

Quintavius Hawkins was convicted of felony murder (predicated on criminal attempt to commit armed robbery) in connection with the death of Clayton Smith, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a felony. On appeal, Hawkins contends (1) he received ineffective assistance of trial counsel, (2) the trial court erred in finding that his third amended motion for new trial was untimely, and (3) the trial court erred in denying him an opportunity to present evidence in support of his third amended motion for new trial. Although we find no merit in these claims, the record shows that the trial court erred when it imposed sentence on both the felony murder and the predicate offense of criminal attempt to commit armed robbery, which offense merged with the felony murder for sentencing. Accordingly, we vacate Hawkins's conviction

for criminal attempt to commit armed robbery, and we otherwise affirm his convictions.[1]

Viewed in a light most favorable to the jury's verdicts, the evidence shows the following. In early September 2015, Smith returned to Georgia after purchasing approximately a half pound of

---

[1] The crimes occurred on September 17, 2015. On December 15, 2015, Hawkins, Mountavius Holt, Rontavius Holt, and Labrinzo Matthews were indicted for malice murder, three counts of felony murder (predicated on criminal attempt to commit armed robbery, criminal attempt to purchase marijuana, and aggravated assault with a deadly weapon), criminal attempt to commit armed robbery, criminal attempt to purchase marijuana, aggravated assault, and possession of a firearm during the commission of a felony. At a July 11 to 15, 2016 trial, the jury found Hawkins guilty of felony murder predicated on criminal attempt to commit armed robbery, felony murder predicated on aggravated assault, criminal attempt to commit armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. The jury found Hawkins not guilty of the remaining counts. On July 29, 2016, the trial court sentenced Hawkins to life imprisonment on the count of felony murder predicated on criminal attempt to commit armed robbery and to a consecutive five-year term of imprisonment on the count of possession of a firearm during the commission of a felony. The count of felony murder predicated on aggravated assault was vacated by operation of law. See *Cowart v. State*, 294 Ga. 333, 335-336 (2) (751 SE2d 399) (2013). The trial court merged the count of aggravated assault into the count of felony murder predicated on criminal attempt to commit armed robbery. The State has not challenged that ruling. See *Dixon v. State*, 302 Ga. 691, 696-698 (4) (808 SE2d 696) (2017). The trial court also erroneously imposed a suspended sentence of five years in prison on the count of criminal attempt to commit armed robbery. See Division 1 (b), infra. Hawkins filed a motion for new trial on August 4, 2016, which he amended on September 4, 2018, January 2, 2019, and January 7, 2019. See Division 3, infra. The trial court entered its order denying the motion for new trial on February 6, 2019. Hawkins's timely appeal was docketed in this Court to the April 2019 term and submitted for decision on the briefs.

marijuana in California. On the afternoon of September 17, 2015, Mountavius Holt encountered Smith, whom he had not previously met, in a McDonald's restaurant parking lot in Atlanta. Smith gave Mountavius a sample of his marijuana, offered to sell him more, and the two men exchanged contact information. Shortly thereafter, Mountavius drove home with his brother, Rontavius Holt.

Mountavius decided to rob Smith, but he needed help because he did not own a weapon. He called his friend, Labrinzo Matthews, who said that Hawkins had a weapon. Mountavius then called Smith and offered to buy some marijuana. Smith gave him an address where they could meet.

That evening, Mountavius, Rontavius, Matthews, Hawkins, and Thomas Way drove in Rontavius's car to a Hardee's restaurant in Fairburn to meet Smith. Smith left his home around 9:00 p.m., carrying a handgun, and drove to the Hardee's in his truck accompanied by his friend, Callie McNew.

When Smith's truck arrived at the Hardee's, Mountavius approached the truck while the other four men remained in

3

Rontavius's car. Mountavius got a sample of marijuana from Smith, took it back to the car to show the others, and he then returned to Smith's truck accompanied by Hawkins. While Mountavius and Smith were arguing about the price of the marijuana, Hawkins pulled out a handgun, and Smith pulled out his gun in response. Hawkins shot Smith, who returned fire. Smith suffered a fatal gunshot wound to the chest and died at the scene. Hawkins's left hand and left hip were injured.

After the exchange of gunfire, Matthews, Rontavius, and Way drove away in Rontavius's car, while Mountavius and Hawkins fled on foot. The men in the car saw Mountavius and stopped to pick him up. Way then answered a phone call from Hawkins, who said that he had been shot and asked that they come and get him. Witness Luis Cajarbajl, who was parked at a restaurant near the Hardee's at the time of the shooting, heard the gunshots and shortly thereafter noticed a man wearing a Batman logo t-shirt and talking loudly on his phone. Cajarbajl heard the man say that he was either "shocked" or "shot." A few minutes later, Cajarbajl saw the man get

4

into a dark colored car, which he described as "like [an] Intrepid or Charger."

After the group picked him up, Hawkins reported that he had lost his gun, so they stopped and searched for it without success. They then drove to the south campus of Atlanta Medical Center and carried Hawkins into the emergency room. At trial, an officer identified the make and model of the car that took Hawkins to the hospital, and in which Rontavius's identification was later found, as a Dodge Intrepid.

Mountavius, Rontavius, and Matthews were arrested minutes after returning to the car. Hawkins was interviewed at the hospital and taken into custody. Way went directly home from the hospital and was later interviewed by police, but he was not arrested, nor was he later indicted.

During the investigation of the crime scene, a GBI agent recovered four cartridge casings, a Jimenez Arms 9mm handgun, a cap, and a watch, among other things. A GBI firearms expert determined that the four cartridge casings were fired by the Jimenez

Arms handgun. Officers also took swabbings of what appeared to be multiple blood stains. A GBI blood analyst confirmed that the swabbings contained blood, and a GBI forensic biologist compared those swabbings with a buccal swab taken from Hawkins. The forensic biologist determined that the blood swabbings contained Hawkins's DNA. The cap recovered at the scene also contained Hawkins's DNA.

1.  (a) Hawkins does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's custom in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Hawkins guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

(b) Hawkins does not raise any merger error, but we have discretion to correct merger errors on direct appeal.  See *Nazario v.*

6

*State*, 293 Ga. 480, 486-487 (2) (b) (746 SE2d 109) (2013). As noted in footnote 1, the trial court sentenced Hawkins on the count of felony murder predicated on criminal attempt to commit armed robbery as well as on the count of criminal attempt to commit armed robbery. "When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction." *Culpepper v. State*, 289 Ga. 736, 737 (2) (715 SE2d 155) (2011) (citation omitted). Neither the indictment nor the charge to the jury specified that Hawkins was being tried for two distinct attempts to commit armed robbery, nor did the evidence show two distinct attempts to commit armed robbery. Accordingly, the count of criminal attempt to commit armed robbery merged with the felony murder conviction, and Hawkins's conviction and sentence for criminal attempt to commit armed robbery must be vacated. See *Green v. State*, 283 Ga. 126, 130-131 (2) (657 SE2d 221) (2008); *Bolston v. State*, 282 Ga. 400, 401 (2) (651 SE2d 19) (2007).

2. Hawkins contends that his trial counsel provided ineffective assistance when he failed to move to suppress the contents of Hawkins's cellphone. To prevail on his ineffective assistance claim, Hawkins must prove both that his trial counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

To prove deficient performance, Hawkins must show that his lawyer performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See *Strickland*, 466 U. S. at 687-688. To show prejudice, Hawkins must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). If Hawkins fails to satisfy either part of the *Strickland* test, we

8

need not address the other part. See *Brown v. State*, 302 Ga. 454, 457 (2) (807 SE2d 369) (2017).

The record shows that on April 18, 2016, the trial court issued a search warrant for Hawkins's Alcatel One Touch cellphone, including a command to "enter, search and seize within ten (10) days of this date the person, premises, or property described above." The warrant did not describe the things to be seized from the cellphone or the crime or crimes for which evidence was sought, nor did it incorporate the supporting affidavit. Hawkins argues that in light of the Fourth Amendment's requirement that all warrants must describe with particularity the person or things to be seized,[2] the warrant was invalid on its face.[3] We need not decide, however, whether trial counsel was professionally deficient in failing to move to suppress the contents of Hawkins's cellphone because Hawkins

---

[2] See U. S. Const. Amend. IV; *Bryant v. State*, 301 Ga. 617, 620 (2) (800 SE2d 537) (2017) (Where "executing officers [do] not have a warrant particularly describing the items they intend[] to seize, the search [is] presumptively unreasonable and unconstitutional under the Fourth Amendment.").

[3] The State does not contest Hawkins's assertion that the warrant was insufficiently particularized

cannot carry his burden of showing prejudice. See, e.g., *Brown*, 302 Ga. at 457 (2).

After the warrant was issued, a police investigator was able to extract information from the cellphone's SIM and SD cards, including video and photographic images. At trial, the State introduced and published to the jury several exhibits derived from the cellphone data. Those exhibits consisted of a brief video showing Hawkins handling a gun, a brief video of Hawkins wearing a Batman logo t-shirt, a photograph of Hawkins wearing a cap, and a photograph of a watch.

The cellphone video of Hawkins with a gun was admitted over trial counsel's objection that the video was irrelevant and without probative value. The State's ballistics expert later testified, outside the presence of the jury, that the gun shown on the video was not the Jimenez Arms handgun found at the scene of the crime, or even similar to that weapon. The trial court then instructed the jury, in pertinent part, that "the video that shows the defendant with a gun is to be totally disregarded by you." Thus, the jury was not

authorized to consider the video showing Hawkins with a gun. See, e.g., *Winters v. State*, 303 Ga. 127, 134 (III) (810 SE2d 496) (2018) (Appellate courts "presume that the jury followed the trial court's instructions in arriving at its verdict.").

Turning to the cellphone evidence that the jury was allowed to consider, the jury could have concluded that the cap and the watch depicted on Hawkins's cellphone were the same cap and watch recovered at the scene of the crime. The cellphone video showing Hawkins wearing a Batman logo t-shirt also tended to identify Hawkins as the man wearing a Batman logo t-shirt whom witness Cajarbajl saw talking on his phone. The foregoing evidence was probative to show that Hawkins was at the scene of the crime, but so was other evidence, including the testimony of Mountavius, Rontavius, Matthews, and Way, and, most notably, unrebutted forensic evidence showing that Hawkins's DNA was present in the cap found at the scene and that the blood recovered at the scene came from Hawkins.

Hawkins contends that he was prejudiced by his trial counsel's

alleged deficiency in failing to move to suppress the contents of his cellphone because the evidence of his guilt was less than overwhelming. Further, he points to testimony showing that the gunshot residue test performed on him at the hospital was negative for the presence of gunshot residue. He points to testimony that McNew was unable to identify Hawkins in a photographic lineup. He also characterizes the testimony of his co-indictees, who had agreed to testify pursuant to the terms of their respective plea agreements, as questionable. The cellphone evidence, however, did not speak to whether Hawkins shot the victim or otherwise participated in the attempted robbery. Rather, the cellphone evidence that Hawkins now alleges should have been suppressed was cumulative of other evidence placing Hawkins at the scene. It is not reasonably likely that the results of the trial would have differed but for trial counsel's alleged deficiency in failing to move to suppress the contents of Hawkins's cellphone. See *Jackson v. State*, 288 Ga. 213, 216 (2) (e) (702 SE2d 201) (2010) (counsel was not ineffective in failing to object to the admission of a photograph on

12

which appellant's nickname was written where the photograph was cumulative of other admissible evidence of appellant's identity); *White v. State*, 283 Ga. 566, 570 (4) (662 SE2d 131) (2008) (counsel was not ineffective in failing to object to testimony that was cumulative of other admissible testimony placing appellant at the scene of the crime). Compare *Bryant v. State*, 301 Ga. 617, 620-622 (2) (800 SE2d 537) (2017) (trial counsel rendered ineffective assistance in failing to move to suppress evidence seized during the execution of an obviously deficient warrant where the only physical evidence connecting appellant to the crime was an empty box of ammunition seized during the search).

3. In related claims, Hawkins contends that (1) the trial court erred when it found that Hawkins's third amended motion for new trial was untimely, and (2) the trial court erred when it denied Hawkins an opportunity to present evidence to support his third amended motion for new trial.

Pertinent to these claims, the record shows the following. Hawkins, through trial counsel, filed a timely motion for new trial

13

on August 4, 2016. Hawkins's current appellate counsel filed a notice of substitution of counsel on October 16, 2017. The trial court, on March 29, 2018, entered an order directing that Hawkins file any amended motion for new trial by June 1, 2018. Hawkins filed a motion for continuance requesting an additional six to twelve months for his appellate counsel to prepare and file an amended motion for new trial. The trial court directed that Hawkins's amended motion for new trial was "due by September 4, 2018," effectively granting a three month continuance.

Hawkins filed an amended motion for new trial on September 4, 2018, and a second amended motion for new trial on January 2, 2019. The second amended motion for new trial asserted, among other things, that Hawkins's trial counsel was ineffective. The trial court held an evidentiary hearing on Hawkins's motion for new trial on January 4, 2019. Three days later, Hawkins filed a third amended motion for new trial (the "third amended motion") asserting that his pre-trial counsel was also ineffective and requesting that the court schedule an evidentiary hearing on the

14

motion. On February 6, 2019, the trial court denied Hawkins's motion for new trial. In that order, the trial court, among other things, addressed the general grounds, addressed the claims raised in the second amended motion for new trial, acknowledged that Hawkins had filed the third amended motion, denied Hawkins's request for a second evidentiary hearing upon concluding that Hawkins had waived his right to a hearing on the claims raised in the third amended motion, and denied on the merits the claims raised in the third amended motion.

(a) Hawkins contends that his third amended motion was not untimely because a motion for new trial "may be amended any time on or before the ruling thereon." OCGA § 5-5-40 (b). In its order denying Hawkins's motion for new trial, the trial court characterized the third amended motion as untimely in light of its previous order extending, until September 4, 2018, the time by which Hawkins was ordered to file any amended motion for new trial. Nevertheless, the trial court proceeded to rule on the merits of the third amended motion, citing OCGA § 5-5-40 (b) as the basis for

15

doing so. The alleged error, if any, was harmless.

(b) Hawkins contended in his third amended motion that his pre-trial counsel provided ineffective assistance in that (1) she failed to request the search warrant for Hawkins's phone after being apprised of the results of the "cell phone dump" of Hawkins's cellphone and (2) failed to move to suppress the photographs and videos recovered from Hawkins's cellphone.[4] The record shows, for the reasons set forth in Division 2, supra, that Hawkins was not prejudiced by pre-trial counsel's alleged deficiencies in failing to ask for a copy of the search warrant or in failing to move to suppress the material recovered from the cellphone. Pretermitting whether the trial court correctly characterized Hawkins's request for an additional hearing as waived, the trial court was not required to conduct a second evidentiary hearing in order to resolve the issues raised in the third amended motion. A second evidentiary hearing

---

[4] Trial counsel entered his appearance in Hawkins's case on June 17, 2016, a few weeks before the July 11 to 15, 2016 trial. Hawkins's pre-trial counsel was representing Hawkins when the search warrant was issued and executed.

16

could not have shown that Hawkins was prejudiced by pre-trial counsel's alleged deficiencies, and we need not remand this case for such a hearing. See *Brown v. State*, 289 Ga. 259, 262-264 (4) (710 SE2d 751) (2011) (where a hearing was held on appellant's motion for new trial on matters then pending, the appellant thereafter amended his motion for new trial and requested a second evidentiary hearing, and the trial court denied the amended motion without conducting a second evidentiary hearing, no remand was required because the record showed that appellant's ineffective assistance of counsel claims failed).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED SEPTEMBER 23, 2019.
Murder. Fulton Superior Court. Before Judge Ellerbe.
*Christina R. Cribbs*, for appellant.

17

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Dustin J. Lee, Teri B. Walker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.